UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
EUGENE SCOTT,

                                    Plaintiff,

                                                            **OPINION & ORDER**

           - against -
                                                             No. 19-CV-1769 (CS)

ROBERT ROSENBERGER, Parole Officer; and
GARY MORGIEWICZ, Senior Parole Officer,

                                    Defendants.
-------------------------------------------------------------x

<u>Appearances</u>:

Eugene Scott
Scranton, Pennsylvania
*Pro Se Plaintiff*

Brendan M. Horan
Assistant New York Attorney General
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is the motion to dismiss of Defendants Robert Rosenberger and Gary

Morgiewicz (collectively, "Defendants").  (Doc. 23.)  For the reasons set forth below,

Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    **BACKGROUND**

        I accept as true the facts, but not the conclusions, set forth in Plaintiff Eugene Scott's

Complaint.  (Doc. 2 ("Compl.").)

### A.   <u>Facts</u>

On April 10, 2012, Plaintiff was sentenced to a term of ten years' probation after pleading guilty to a "Criminal Sexual Act involving his six year old cousin at his residence."  (*Id.* ¶ 6.)[1]  Plaintiff alleges he was sentenced as a "youthful offender."  (*Id.*)

On an unspecified date, Plaintiff violated his probation in an unspecified manner, and on December 9, 2015, he was sentenced to one and one-third to four years' imprisonment (*Id.* ¶ 7.)

On January 10, 2019, Plaintiff was released from prison and placed under the care of Defendant Rosenberger, a parole officer with the New York State Department of Corrections and Community Supervision ("DOCCS").  (*Id.* ¶ 8.)  Rosenberger's supervisor was Defendant Morgiewicz.  (*Id.* ¶ 4.)  Plaintiff alleges that Rosenberger and Morgiewicz "decided to supervise Plaintiff as a discretionary sex offender."  (*Id.* ¶ 18.)

Rosenberger gave Plaintiff a list of several special conditions of parole that were to be imposed.  (*Id.* ¶ 9.)

> The conditions read:  I will not be in contact with children under the age of 18 unless I have permission[;] I will not purchase or possess a camera or related photography equipment, or a video camera or related equipment without permission[;] if given permission to obtain a driver's license I will drive only to and from work[;] I will not rent, own, use, posses, purchase, or have control of any computer, computer-related material, and/or internet unless I obtain written permission[;] I will not rent, operate, or be a passenger in any vehicle without permission.

(*Id.*)  Rosenberger also told Plaintiff that Plaintiff had to "inform" Rosenberger "of all relationships formed by Plaintiff sexual or not."  (*Id.* ¶ 21.)  Plaintiff asked Rosenberger why "so many special conditions were being re-imposed when they were already removed when his parole conditions were amended by a parole commissioner the previous June."  (*Id.* ¶ 10.)

---

[1] It is unclear from the face of the Complaint whether the second "his" in that quotation refers to Plaintiff or Plaintiff's cousin.

Plaintiff also told Rosenberger that the conditions restricting his access to vehicles, computers, the internet, and camera phones had nothing to do with his offense.  (*Id.*)  Rosenberg responded, "'[B]ecause you're a sex offender and all sex offenders get the same conditions that's why they are being imposed.'"  (*Id.*)  Plaintiff asked if he could speak with Rosenberger's supervisor before signing an acknowledgment of his conditions of parole, but Rosenberger said that his "senior and bureau chief" already approved of the conditions, so Plaintiff signed the document listing the special conditions.  (*Id.*)

Rosenberger took Plaintiff to meet with a caseworker at the Department of Social Services ("DSS"), and to "the only Sexual Assault Reform Act ("SARA") [public] housing in Orange County," where Plaintiff would stay while on parole.  (*Id.* ¶ 8.)  Plaintiff's caseworker told Plaintiff that he had to seek employment and keep all employment-related appointments to remain on public assistance, and Rosenberger stated that if Plaintiff lost his public assistance, he would have to go back to prison for not having access to SARA-compliant housing.  (*Id.* ¶ 11.)

On or about January 21, 2019, Plaintiff requested permission from Rosenberger to take classes to renew his Emergency Medical Technician ("EMT") certificate.  (*Id.* ¶ 12.)  Rosenberger told Plaintiff that the request was under review.  (*Id.*)

On January 22, Plaintiff went to the Department of Labor, where he was reminded that he had to search for employment while on parole.  (*Id.* ¶ 13.)  He was "introduced" to the resource room there, where he used a computer to update his resume and apply for jobs.  (*Id.*)  That same day, one of the employers to which he applied agreed to interview him for a position on January 24.  (*Id.*)

On January 23, Plaintiff registered for anger management classes, which he was required to do under his parole conditions.  (*Id.* ¶ 14.)  Plaintiff told Rosenberger that the anger management class times would "conflict[] with the potential employment opportunity" for which

he had scheduled an interview.  (*Id.*)  Rosenberger responded that Plaintiff would not be permitted to take that job because of the conflict, so Plaintiff canceled the interview.  (*Id.*)

On January 24, Rosenberger told Plaintiff that his request to renew his EMT certificate was denied because there was a chance that both the classes and a job as an EMT would bring Plaintiff into contact with minors.  (*Id.* ¶ 15.)  Rosenberger stated that his supervisor, Defendant Morgiewicz, made the decision to deny Plaintiff's request.  Plaintiff explained that he had previously been an EMT while on probation, EMTs must be at least eighteen years old so there would be no minors in the certification classes, and Plaintiff would always be under the supervision of his EMT or paramedic partner if he obtained his certificate and got a job as an EMT.  (*Id.*)  Plaintiff then asked if he could take EMT certification classes at a local college, to which Rosenberger replied that Plaintiff would have to disclose his youthful offender adjudication to any college in which he enrolled.  (*Id.*)

On January 24, Plaintiff went back to the Department of Labor and applied for more jobs. (*Id.*)

On January 28, Plaintiff met with Rosenberger and said that he had two upcoming interviews.  (*Id.* ¶ 16.)  Plaintiff also requested a copy of the reasons his request to take EMT classes was denied.  (*Id.*)

On January 30, Rosenberg took Plaintiff into custody for violating his parole conditions by using a computer without permission while at the Department of Labor.  (*Id.* ¶ 17.)

### B.  Procedural History

Plaintiff's Complaint, dated February 14, 2019, brought the following claims under 42 U.S.C. § 1983 against Defendants in both their individual and official capacities: (1) procedural and substantive due process violations against both Defendants for designating Plaintiff as a "discretionary sex offender," (2) First Amendment and due process violations

against both Defendants for the "40 special conditions" of parole imposed on Plaintiff, (3) First Amendment and due process violations against Morgiewicz for denying Plaintiff's request to take EMT classes, and (4) First Amendment and due process violations against Rosenberger for requiring Plaintiff to disclose to colleges that he was a sex offender and disclose to Rosenberger whenever Plaintiff entered into any relationship.  (*Id.* ¶¶ 5, 18-21.)  Plaintiff sought declaratory relief and money damages.  (*Id.* at 8.)

On October 11, 2019, Defendants filed a pre-motion letter, (Doc. 20), and the Court set a date for a pre-motion conference and ordered Plaintiff to respond to Defendants' letter by November 12, 2019, (Doc. 21).  Plaintiff did not do so, but at the pre-motion conference on November 18, 2019, Plaintiff provided Defendants and the Court with his responsive letter, which was dated November 2.  (Doc. 24 ¶ 2; *id.* Ex. A.)  In Plaintiff's letter, he acknowledged that he was no longer on parole or under the supervision of DOCCS, and thus his claim for declaratory relief was moot.  (*Id.* Ex. A at 1.)

At the pre-motion conference, the Court discussed Defendants' letter and Plaintiff's response and set a schedule for Plaintiff to amend his Complaint and for Defendants to move to dismiss.  (Minute Entry dated Nov. 18, 2019.)

Plaintiff did not amend his Complaint by the deadline set by the Court.

On February 21, 2020, Defendants moved to dismiss, (Doc. 23), and filed a memorandum of law in support of their motion, (Doc. 25 ("Ds' Mem.")).  Plaintiff to date has not opposed Defendants' motion.  The Court thus considers the motion fully briefed.

## II.   **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs shall be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (internal quotation marks and emphasis omitted),[2] and "held

_____

[2] The Court will send Plaintiff copies of all unreported cases cited in this Opinion and Order.

to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

A plaintiff's failure to oppose a motion to dismiss "does not, without more, justify dismissal," *James v. John Jay Coll. of Criminal Justice*, 776 F. App'x 723, 724 (2d Cir. 2019) (summary order), especially where the plaintiff is *pro se*, *see Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 536 (S.D.N.Y. 2015).  That is because "the sufficiency of a complaint is a matter of law that the district court is capable of determining based on its own reading of the pleading and knowledge of the law."  *Goldberg v. Danaher*, 599 F.3d 181, 184 (2d Cir. 2010) (internal quotation marks and alteration omitted).

III.   **DISCUSSION**

A.   **Declaratory Relief**

Plaintiff's Complaint seeks a declaration vacating his special conditions of parole, (Compl. at 8), but as Plaintiff acknowledges, the Court cannot provide that form of relief because Plaintiff has reached the maximum expiration date of his sentence and is no longer subject to any parole conditions.  (Doc. 24 Ex. A at 1.)  Accordingly, to the extent Plaintiff's claims seek declaratory relief, they are dismissed as moot.  *See Krull v. Oey*, 805 F. App'x 73, 74 (2d Cir. 2020) (summary order) (dismissing equitable claim as moot where the court "can no longer provide that form of injunctive relief"); *Maldonado v. Fischer*, No. 11-CV-1091, 2013 WL 5487429, at *4 (W.D.N.Y. Sept. 30, 2013) ("As plaintiff is no longer subject to special conditions of parole, his request for injunctive relief is moot.").

B.      **Claims Against Defendants in Their Official Capacities**

Plaintiff states his claims are brought against Defendants "in their official and individual capacities."  (Compl. ¶ 5.)  But "DOCCS officials enjoy Eleventh Amendment immunity from suit under § 1983 for damages in their official capacities."  *Gunn v. Bentivegna*, No. 20-CV-2440, 2020 WL 2571015, at *3 (S.D.N.Y. May 19, 2020); *see Ortiz v. Russo*, No. 13-CV-5317, 2015 WL 1427247, at *5 (S.D.N.Y. Mar. 27, 2015) ("[E]ach of the Defendants are employees of DOCCS, a state entity, and are therefore entitled to Eleventh Amendment immunity from claims against them in their official capacity.").  Accordingly, Plaintiff's claims against Defendants in their official capacities are dismissed.

C.      **Plaintiff's Designation as a Discretionary Sex Offender**

Plaintiff alleges he was denied procedural and substantive due process when Defendants designated him "as a discretionary sex offender while being fully aware of the liberty restrictions that would be placed on the Plaintiff as a result of that designation."  (Compl. ¶ 18.)

1.      **Procedural Due Process**

Plaintiff alleges that he "was not given the opportunity to attend any hearing or given a choice to dispute th[e] designation," nor was he "given any form of individualized assessment clinical or otherwise to defend himself against th[e] designation" in violation of his procedural due process rights secured by the Fourteenth Amendment.  *Id.*

When faced with a procedural due process claim under the Fourteenth Amendment, courts must proceed with the following two-step inquiry:  first, inquire "'whether there exists a liberty or property interest which has been interfered with,'" and second, inquire "'whether the procedures attendant upon that deprivation were constitutionally sufficient.'"  *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); *see Singleton v. Doe*, 210 F. Supp. 3d 359, 366 (E.D.N.Y 2016) ("A court first asks

whether there exists a liberty or property interest of which a person has been deprived, and if so, whether the procedures followed by the State were constitutionally sufficient.") (internal quotation marks omitted).  In other words, if a plaintiff is not deprived of a constitutionally protected liberty interest, the Court need not reach the issue of whether the attendant procedures were constitutionally sufficient.

"[I]t is an unsettled question in this Circuit as to whether a prisoner holds a liberty interest in being designated as a [discretionary sex offender]."  *Webster v. Himmelbach*, 271 F. Supp. 3d 458, 464 (W.D.N.Y. 2017); *see Singleton*, 210 F. Supp. 3d at 367 (court "unaware of any Second Circuit federal court determination that addresses a parolee's liberty interest in being free from a discretionary sex offender designation") (emphasis omitted).  That said, the only cases that have considered a constitutionally protected liberty interest in not being designated as a discretionary sex offender have done so using the "stigma-plus" theory.  *See Singleton*, 210 F. Supp. 3d at 367-71 (plaintiff established genuine issue of fact regarding whether designation as discretionary sex offender violated his due process rights under stigma-plus test); *see also Maldonado v. Mattingly*, No. 11-CV-1091, 2019 WL 5784940, at *8 (W.D.N.Y. Nov. 6, 2019) (granting summary judgment in favor of defendant, but analyzing plaintiff's claim under stigma-plus theory).  The stigma-plus theory acknowledges that a liberty interest may be implicated "when a person's good name and reputation are at stake."  *Singleton*, 210 F. Supp. 3d at 367.

"To establish a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotation marks omitted).  "Thus, even where a plaintiff's allegations would be sufficient to

demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Id.* (internal quotation marks omitted).

Here, Plaintiff alleges that he pled guilty to a "Criminal Sexual Act involving his six year old cousin," after which he was placed on probation, which he violated. (Compl. ¶¶ 6-7.) After serving a term of incarceration, he was released on parole, and Defendants designated him as a "discretionary sex offender." (*Id.* ¶ 18.) Plaintiff has conceded that he was found guilty of engaging in criminal misconduct with his six-year-old cousin and that his conduct was sexual in nature. In other words, Plaintiff's Complaint leaves undisputed that he committed a sexual offense and that he is a sex offender. Thus, Plaintiff has failed to plausibly allege that his designation as a sex offender was false or is capable of being proved false, and he therefore cannot establish that he had a constitutionally protected liberty interest in maintaining his good name and reputation under the stigma-plus theory. *See Vega*, 596 F.3d at 82 (where plaintiff did not dispute committing sexual offense, he "has not established a threshold requirement" for a stigma-plus claim: "the existence of a reputation-tarnishing statement that is *false*") (emphasis in original). Accordingly, Plaintiff has failed to plausibly allege a constitutional violation under the stigma-plus theory. And because Plaintiff does not otherwise posit a theory under which he would have a constitutionally protected liberty interest in not being designated a discretionary sex offender, his procedural due process claim is dismissed.

### 2.    Substantive Due Process

"To plead a substantive due process claim, a plaintiff must assert that: (1) a constitutionally cognizable property or liberty interest is at stake, and (2) defendants' alleged acts were arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised." *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 3 (2d Cir. 2013) (summary order) (internal quotation marks and alterations omitted). Thus, like Plaintiff's

procedural due process claim, the threshold inquiry is whether Plaintiff has plausibly pleaded that he has a constitutional liberty interest in being free from a discretionary sex offender designation.  For essentially the same reasons discussed in the procedural due process section above, Plaintiff has not.

As noted, Plaintiff does not dispute that he engaged in a criminal sexual act with his six-year-old cousin.  While a plaintiff may have "a substantive liberty interest in not being labeled a sex offender *when he has committed no sexual offense*," *Yunus v. Robinson*, No. 17-CV-5839, 2019 WL 168544, at *9 (S.D.N.Y. Jan. 11, 2019) (emphasis added), *appeal withdrawn sub nom. Yunus v. Lewis-Robinson*, No. 19-382, 2019 WL 3814554 (2d Cir. May 15, 2019), Plaintiff here has not plausibly alleged that he did not commit a sexual offense.  In fact, he pleaded that he did commit a sexual offense.  (Compl. ¶ 6.)  Accordingly, Defendants' decision to designate Plaintiff as a discretionary sex offender did not implicate any constitutionally protected liberty interests, and Plaintiff's substantive due process claim regarding the designation is dismissed.

### D.   Plaintiff's Special Parole Conditions

Plaintiff alleges that Defendants "imposed and enforced over 40 special conditions upon the Plaintiff while being aware that those conditions had nothing to do with his crime," thereby violating his substantive due process rights.  (Compl. ¶ 19.)  He also alleges that some of the forty conditions violated his First Amendment rights.  (*See id.* ¶¶ 19-21.)  But Plaintiff did not allege each of the forty conditions; rather he pleaded only the following special conditions: (1) prohibition on contact with minors without permission; (2) prohibition on possession of cameras or related equipment without permission; (3) prohibition on obtaining a driver's license without permission; (4) if Plaintiff got a driver's license, he was allowed to drive only to and from work; (5) prohibition on computer and internet use without permission, (6) prohibition on operating or being a passenger in a vehicle without permission; (7) denial of request to take EMT

classes and receive EMT certification; (8) mandatory disclosure to any college in which he enrolled of his youthful-offender status; and (9) mandatory disclosure to Rosenberger of any "relationships . . . sexual or not" into which Plaintiff entered.  (*Id.* ¶¶ 9, 15, 19-21.)  Defendants argue that the special conditions did not violate Plaintiff's constitutional rights because they are rational in light of his crime and previous probation violation and are not arbitrary and capricious.  (Ds' Mem. at 15-19.)

"Parolees are entitled to some form of due process in the imposition of special conditions of parole."  *Yunus*, 2019 WL 168544, at *20 (S.D.N.Y. Jan. 11, 2019) (internal quotation marks and alteration omitted).  "Generally, the imposition of conditions . . . must be upheld as long as they are reasonably related to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses."  *Trisvan v. Annucci*, 284 F. Supp. 3d 288, 298-99 (E.D.N.Y. 2018) (internal quotation marks omitted); *see Muhammad v. Evans*, No. 11-CV-2113, 2014 WL 4232496, at *9 (S.D.N.Y. Aug. 15, 2014) ("In the Second Circuit, special restrictions on a parolee's rights are upheld where they 'are reasonably and necessarily related to the interests that the Government retains after his conditional release.'") (quoting *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972)); *see also United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005) (in federal supervised release context, conditions "must involve no greater deprivation of liberty than is reasonably necessary for the purposes of sentencing") (internal quotation marks and alteration omitted); *Doe v. Lima*, 270 F. Supp. 3d 684, 702 (S.D.N.Y. 2017) (applying *Myers* to state parole context), *aff'd sub nom. Doe v. Cappiello*, 758 F. App'x 181 (2d Cir. 2019) (summary order); *Doe v. Annucci*, No. 14-CV-2953, 2015 WL 4393012, at *13 (S.D.N.Y. July 15, 2015) (applying *Myers* in addressing qualified immunity in state parole context).  "However, where the condition is not related to the parolee's criminal history or to the State's interests, it may be prone to tailoring or invalidation."  *Robinson v. New*

*York*, No. 09-CV-455, 2010 WL 11507493, at *6 (N.D.N.Y. Mar. 26, 2010) (collecting cases in which parole conditions were not reasonably related to offense).  And where the condition deprives the parolee of a liberty interest that "is fundamental" under the Constitution, "a deprivation of that liberty is 'reasonably necessary' only if the deprivation is narrowly tailored to serve a compelling government interest."  *Myers*, 426 F.3d at 126; *see Lima,* 270 F. Supp. 3d at 702 ("The Second Circuit has applied strict scrutiny to restrictions on liberty incident to post-prison supervisory regimes, whether denominated as parole (as in New York State) or as supervised release (as in the federal system).").

"[W]hile a plaintiff who claims that his parole conditions are arbitrary and capricious must provide enough information concerning his underlying crimes to plausibly allege that those conditions are not reasonably related to his prior conduct," the plaintiff need not "establish the lack of a rational relationship between these parole conditions and his criminal history by describing in detail the facts underlying his crime of conviction as found at trial and explaining why the parole conditions are unreasonable or unnecessary despite the actions for which he was convicted."  *Yunus v. Robinson*, No. 17-CV-5839, 2018 WL 3455408, at *39 (S.D.N.Y. June 29, 2018) (internal quotation marks, emphasis, and alterations omitted), *report and recommendation adopted*, 2019 WL 168544.

### 1.    Prohibition on Contact with Minors

Plaintiff's second claim is dismissed to the extent it is challenging the condition that he could not have contact with minors without permission from his parole officer.  Plaintiff acknowledged engaging in a "Criminal Sex Act with a six year old."  (Compl. ¶ 6.)  Restricting his access to minors is thus reasonably related to Plaintiff's past conduct and is designed to prevent Plaintiff from committing further offenses, and Plaintiff has not plausibly alleged that the

condition is arbitrary and capricious.  *See Trisvan*, 284 F. Supp. 3d at 298-99.  Accordingly, the condition did not violation Plaintiff's substantive due process rights.[3]

### 2.   Prohibition on Cameras and Related Equipment

Plaintiff alleges that the special condition prohibiting possession or use of a camera or any related equipment violates (1) his Fourteenth Amendment rights because the condition is not related to his underlying offenses and (2) his First Amendment rights because he cannot possess a camera phone, which interferes with his ability to maintain a relationship with his son. (Compl. ¶ 19; *see id*. ¶ 9.)

As noted, special restrictions on a parolee's rights must be reasonably related to Plaintiff's past conduct.  And if a restriction violates a parolee's fundamental liberty interests – like a parent's interest in maintaining a relationship with his child – that restriction must be narrowly tailored to serve a compelling state interest.  *See Lima,* 270 F. Supp. 3d at 702.  On the record before me, restricting Plaintiff's access to cameras or related equipment, including camera

---

[3] In his Complaint, Plaintiff states that he has a "son who lives states away."  (Compl. ¶ 19.)  If Plaintiff alleged that the restriction on contact with minors without permission prevented him from maintaining a relationship with his son, heightened scrutiny might apply to that claim, which would require a different analysis than the one in which Court the engaged above.  *See Lima,* 270 F. Supp. 3d at 702 ("It is well established that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by substantive due process. . . .  Restrictions on such protected liberty interests are subject to strict scrutiny.").  *See generally* Max B. Bernstein, *Supervised Release, Sex-Offender Treatment Programs, and Substantive Due Process*, 85 Fordham L. Rev. 261, 283-86 (discussing heightened scrutiny applied to conditions of supervised release infringing on fundamental liberty interests).  But Plaintiff did not allege that the restriction on contact with minors had any effect on his relationship with his son or even that he had the ability or right to visit his son.  (Indeed, it would be unusual if a parolee could visit with relatives "states away.")  Plaintiff was fully capable of alleging such interference if it existed, as he pleaded that the condition prohibiting camera phone possession "made it extremely difficult to establish and maintain a relationship with his son."  (Compl. ¶ 19.)  Accordingly, Plaintiff's condition of release restricting his contact with minors does not trigger any heightened scrutiny, and his claim stemming from that condition is dismissed for the reasons discussed above.

phones, has nothing to do with Plaintiff's past conduct.  There is no indication in the Complaint

that Plaintiff's Criminal Sex Act or subsequent probation violation involved cameras, videos,

cellphones or any related equipment.  And to the contrary, Plaintiff alleges that the condition

"had nothing to do with his crime."  (Compl. ¶ 19.)  Perhaps in discovery it will come to light

that Plaintiff's criminal conduct included taking pictures or videos, or possessing the same, but

on the face of the Complaint, I cannot make that determination.  Thus, because there is no

indication that Plaintiff's crimes involved cameras, Plaintiff has plausibly alleged that this

special condition violated his due process rights.  *See Singleton*, 210 F. Supp. 3d at 376 (denying

defendants' motion for summary judgment where "Defendants have not provided the Court with

evidence that the cellular telephone restriction was related to Plaintiff's prior conduct").[4]

Defendants do not even attempt to explain why this condition was reasonably related to

his offense.  Rather, they argue, as they do for all of the special conditions, that as a sex offender,

Plaintiff is subject to "more intensive supervision," justifying all of the special conditions

imposed on him.  (Ds' Mem. at 16 (citing *Maldonado*, 2019 WL 5784940, at *5 (noting that the

discretionary sex offender designation is applied where "[i]t appears that the offender and/or

community would benefit from intensive supervision practices that incorporate specialized sex

offender 'containment' strategies.")) (alteration in original).)  If the Court were to follow

Defendants' logic here, essentially any condition could be imposed on a sex offender.  But the

law is clear that special conditions, whether imposed on sex offenders or any other offenders,

---

[4] Defendants have not argued that Plaintiff has failed to plausibly allege how the restriction on having a camera, whether in a phone or otherwise, interfered with his relationship with his son.  It seems to the Court that there are still phones available that do not have cameras and do not connect to the internet, and that Plaintiff could have communicated with his son using such a device.  But whether the camera restriction in fact interfered with that relationship may be taken up at a later stage.

must be reasonably related to the offender's past conduct.  *See Singleton*, 210 F. Supp. 3d at 376 (genuine issue of fact existed whether cellphone prohibition on plaintiff sex offender was unconstitutional).  In fact, even in *Maldonado* (the case that Defendants cite to support this argument), the court engaged in a condition-by-condition analysis, determining that some were appropriate and some were not.  *Maldonado*, 2019 WL 5784940, at *10-11 (condition preventing plaintiff from "communal worship" survived motion, while condition limiting access to "premium cable channels" did not).

Next, Defendants argue that because Plaintiff had violated his probation in the past, more restrictive conditions were appropriate for him on parole.  (Ds' Mem. at 16.)  But the Court does not know what Plaintiff did to violate his probation, and there is no indication that it had anything to do with the possession of a camera or related equipment.  Thus, I cannot say that a condition restricting his access to cameras is reasonably related to his previous probation violation.  And Defendants have provided no authority to suggest that a parolee who has violated conditions of supervision in the past may subsequently be subject to any special condition, no matter how restrictive or unrelated to his previous offense.  Finding none myself, I reject Defendants' argument.

Finally, Defendants argue that the ban on cameras – and all of the other special conditions – "were the initial conditions imposed upon [Plaintiff's] release, which Plaintiff subsequently violated within less than three weeks," meaning that "Defendants had almost no time to adjust the conditions after assessing Plaintiff's adjustment to his release and gauging his efforts to reintegrate following his incarceration for a violation of probation."  (*Id.* at 17-18.)  But conditions of parole must be reasonably related to Plaintiff's past conduct and cannot be arbitrary and capricious "whether imposed prior to or subsequent to release."  *Trisvan*, 284 F. Supp. 3d at 298-99 (internal quotation marks omitted).  Defendants (or any parole officers, for that matter)

are not permitted to impose unconstitutional conditions of parole merely because they are the "initial conditions" and Defendants may reel them back later so long as they deem Plaintiff to have sufficiently reintegrated.  Accordingly, Defendants' argument that this special condition is valid, despite the fact that it is not reasonably related to Plaintiff's past conduct, is without merit.[5]

### 3.      Vehicle Restrictions

Plaintiff alleges that Defendants violated his constitutional rights by restricting his ability to get a driver's license or ride in vehicles.  (Compl. ¶¶ 9, 19.)  Defendants argue that the vehicle restrictions were legitimate because they were not absolute bans but rather required Plaintiff to seek permission before getting in a car or obtaining a driver's license.  (Ds' Mem. at 17.)  Defendants further assert that "Courts have routinely upheld restrictions on parolees' movements and associations."  (*Id.* (citing *Trisvan*, 284 F. Supp. 3d at 299 & n.7 ("Traveling and access to vehicles, including a driver's license, may also be curtailed given Plaintiff's exhibited willingness to flee authorities. . . .  The restriction on possessing a driver's license and operating a vehicle, in conjunction with the travel condition, may assist parole officers in monitoring Plaintiff's activities, a 'clearly legitimate penological objective.'") (quoting *Muhammad v. Jenkins*, No. 12-CV-8525, 2014 U.S. Dist. LEXIS 158481, *18 (S.D.N.Y. Nov. 4, 2014)), and *Morrissey v. Brewer*, 408 U.S. 471, 478 (1972) ("Typically, [parolees] must seek permission from their parole officers before engaging in specified activities, such as . . . acquiring or operating a motor vehicle . . . .")).)  But these cases do not help Defendants, as Plaintiff has plausibly alleged that the vehicle restrictions were not reasonably related to the crimes he

---

[5] Defendants' arguments described in this section are raised with respect to all of the special conditions they imposed on Plaintiff.  For the same reasons, those arguments are rejected as applied to all of the special conditions discussed below.

committed, at least on the record before me where there is no indication that his crimes involved vehicles or that he posed a flight risk.

The cases on which Defendants rely do not change the Court's analysis.  In *Trisvan*, the court asked whether the vehicle restrictions were "reasonably related to a parolee's past conduct," and it found that they were "given Plaintiff's exhibited willingness to flee authorities." *Trisvan*, 284 F. Supp. 3d at 299.  Here, in contrast, there is nothing in the Complaint to suggest that Plaintiff had shown a willingness to flee authorities or was otherwise a flight risk.  Nor can I determine at this stage that a ban on being in a car would be of any use in monitoring Plaintiff's activities or whereabouts.  Thus, *Trisvan* does not help Defendants here.

The *Muhammed* opinion Defendants cited was a denial of a request for a preliminary injunction, and the Court merely noted that Plaintiff had a "checkered history as a parolee, replete with violations of parole conditions," which made it unlikely that he would succeed on the merits of a claim that an imposed curfew was unconstitutional.  2014 U.S. Dist. LEXIS 158481, *17-18 (internal quotation marks omitted).  That case is not factually analogous to the case at hand.

Finally, while *Morrissey* explained that parolees typically (at least as of 1972) had to seek permission from their parole officers before acquiring or operating a motor vehicle, the conditions here are far more restrictive, as Plaintiff must seek permission to even be a passenger in one.  (Compl. ¶ 19.)  Further, *Morrisey* – which held that due process requires a hearing in connection with revocation of parole, *see* 408 U.S. at 485-89 – did not address whether conditions of parole must be reasonably related to the parolee's past conduct, and does not contradict the law in this Circuit that they must.  On the record before me now, there is nothing to suggest that Plaintiff's past conduct had anything to do with vehicles.  And the possibility of case-by-case exceptions to a ban does not save an overly broad condition.  *Yunus*, 2019 WL

168544, at *16.  Accordingly, Plaintiff's claim that his special condition of parole restricting vehicle access violated his due process rights may proceed.

### 4.    Computer and Internet Restrictions

Plaintiff alleges that conditions restricting his access to computers and the internet violated his First and Fourteenth Amendment rights.  Defendants argue that the computer and internet restrictions are valid because they merely obligated Plaintiff "to seek and obtain permission from parole officials before using a computer or the internet, allowing close monitoring of his technology usage."  (Ds' Mem. at 17 (citing *United States v. Browder*, 866 F.3d 504, 511, n.26 (2d Cir. 2017) (upholding supervised release condition allowing monitoring of plaintiff's computer usage)).)  But again, Defendants' argument misses the mark.  In *Browder*, the defendant "was convicted of possessing over 462 digital images of child pornography that he received (and shared) on internet exchanges, so computer monitoring is 'reasonably related' to the nature and circumstances of the offense and Browder's history and characteristics."  866 F.3d at 512.  Here, there is nothing to suggest that Plaintiff's underlying crime or probation violation involved computers or the internet, so there is no indication that imposing restrictions on all computer or internet use without permission is reasonably related to Plaintiff's conduct.  In other words, Plaintiff has plausibly alleged that the restriction was not reasonably related to his past conduct.

Further, such restrictions may infringe on Plaintiff's First Amendment rights.  *See United States v. Eaglin*, 913 F.3d 88, 95 (2d Cir. 2019) (parolees have constitutional right to internet access and restrictions on that right presented heightened constitutional concerns, requiring more searching inquiry); *Browder*, 866 F.3d at 511 (even conditions imposing computer monitoring as opposed to a total ban have "a constitutional gloss"); *see also Lima*, 270 F. Supp. 3d at 702 ("[T]o satisfy substantive due process, such a restriction on a releasee's liberty 'must reflect the

heightened constitutional concerns' of strict scrutiny, meaning that the deprivation must be 'narrowly tailored to serve a compelling government interest.'") (quoting *Myers*, 426 F.3d at 126). At this stage, Plaintiff has alleged that the condition is not even reasonably related to his past conduct, so by definition he has also alleged that the condition would not survive a more searching inquiry. Accordingly, Plaintiff has sufficiently alleged that the computer and internet restrictions violated his rights guaranteed under the First Amendment as well as the Fourteenth, and Plaintiff's claim regarding this special condition may proceed.

### 5. EMT Certification Restriction

Plaintiff claims that Morgiewicz's refusal to allow Plaintiff to obtain his EMT certification violated his First and Fourteenth Amendment rights. (Compl. ¶¶ 15, 20.) Defendants argue that that decision was not arbitrary and capricious and was reasonably related to Plaintiff's past conduct, and thus not unconstitutional, because "as an EMT, Plaintiff would come into contact with, and be obligated to treat, vulnerable persons, including minors." (Ds' Mem. at 18.) The problem with Defendants' argument, however, is that Plaintiff's claim relates only to his request to take classes to get his EMT certification. (Compl. ¶ 20.) As Plaintiff alleged, all EMTs must be at least eighteen years old, so Plaintiff has plausibly stated that he would not come into contact with minors – or at least not young minors near the age of the victim of his offense – by merely taking the certification classes. (Compl. ¶ 15.) Accordingly, this restriction is plausibly arbitrary and capricious, as it would deprive Plaintiff of the opportunity to pursue his desired occupation in the future, without achieving any desired goal of parole.[6]

---

[6] While Defendants suggest that Plaintiff could properly be prohibited from working as an EMT while on parole, the training would not necessarily be superfluous, as the record at this

Further, Plaintiff has adequately alleged that the restriction violated his First Amendment right to pursue his desired occupation. While not entirely on point, there is well-established law in this Circuit that conditions of federal supervised release may not impose "an occupational restriction" on a releasee unless

> (1) a reasonably direct relationship exist[s] between the defendant's occupation and the conduct relevant to the offense of conviction; and (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

*United States v. Lombardi*, 727 F. App'x 18, 20 (2d Cir. 2018) (summary order) (internal quotation marks omitted). While the federal supervised release statute is different from New York's parole statute, the logic underlying the federal rule on occupational restrictions is persuasive in this context as well.

Defendants argue that there is a reasonable relationship between Plaintiff's conduct – a criminal sexual act with a six-year-old – and the occupational restriction: preventing potential access to minors. That might justify preventing Plaintiff from doing the job of an EMT while on parole, but it bears a more tenuous relationship to taking the classes for potential employment later on. Further, at this stage, Plaintiff has plausibly alleged that serving as an EMT would not create the risk that he would continue to engage in criminal misconduct similar to that for which he was convicted, because Plaintiff alleges that EMTs are always observed by their partners.[7]

---

stage does not contain reference to any legal impediment to Plaintiff obtaining such employment once his parole term concluded.

[7] Plaintiff also alleges that he would present no risk because EMTs cannot treat a minor without parental consent. (Compl. ¶ 15.) I do not find that allegation plausible. It seems plain that parental consent cannot always be obtained in emergency situations, and even if it could, such consent would do little to mitigate the risk if the parent were not informed of Plaintiff's criminal history.

(Compl. ¶ 15.)  Accordingly, he has plausibly stated that there is no risk that he would continue to engage in criminal sexual acts with minors if he served as an EMT,[8] and his claim regarding restrictions on EMT classes may proceed.

### 6.    Requirement to Disclose Youthful-Offender Status to Colleges

Plaintiff next alleges that Rosenberger's condition that Plaintiff could attend college classes only if he disclosed his criminal history to the college violated his rights under the First and Fourteenth Amendments.  (*Id.* ¶ 21.)  Defendants argue that because "Plaintiff pleaded guilty to a sexual offense involving a minor, the condition is rationally related to his past conduct" because it "would permit school officials to be informed and take reasonably necessary measures to protect their students, some of whom may be minors." (Ds' Mem. at 18.)  I disagree, at least at this stage.

First, Defendants provide no authority suggesting that disclosure of sex-offender status to colleges is a reasonable condition of release.  Second, colleges typically serve adult-aged students, and that some students may be minors – when Plaintiff's offense involved a minor so young that the chances of there being a college student of approximately that age are virtually nil – does not establish at this stage that a condition requiring disclosure before Plaintiff can access college is reasonably related to Plaintiff's criminal conduct.  *Cf United States v. Peterson*, 248 F.3d 79, 86 (2d Cir. 2001) ("In view of the defendant's prior child sex abuse, the court had justification to impose a condition of probation that prohibits the defendant from being at educational and recreational facilities where children congregate. . . .  [H]owever, there would be no justification to forbid the defendant from being at parks and educational or recreational

---

[8] The Court is not convinced that an EMT is so closely supervised at all times that he could not endanger a child, but at this stage I must accept Plaintiff's allegations as true.

facilities where children do not congregate.").  Defendants' conclusory assertion that some

minors may enroll in college is insufficient at this stage to defeat Plaintiff's claim.  Accordingly,

Plaintiff's claim regarding this special condition may proceed.

### 7.   Requirement to Notify Defendants of Any Relationship

Plaintiff claims that Rosenberger imposed a condition under which Plaintiff had to

"inform . . . Rosenberger of all relationships formed by Plaintiff sexual or not," which violated

his constitutional rights  (Compl. ¶ 21.)  Defendants argue that "a condition obligating Plaintiff

to disclose his relationships to parole officials is rational to ensur[e] Plaintiff's continued

rehabilitation, assisting parole officials in monitoring Plaintiff's compliance with conditions, and

protecting members of the public."  (Ds' Mem. at 18-19 (citing *Birzon*, 469 F.2d at 1243).)  I

find that Plaintiff has plausibly alleged that this condition was both unconstitutionally vague and

violated his substantive due process rights.

"A condition is unconstitutional if it is so vague that [individuals] of common

intelligence must necessarily guess at its meaning and differ as to its application."  *United States

v. Reeves*, 591 F.3d 77, 81 (2d Cir. 2010) (internal quotation marks omitted).  Here, it is unclear

to this Court what a "relationship . . . sexual or not" would encompass.  Would Plaintiff be at risk

of re-incarceration if he waved to his neighbor but did not report that contact to his parole

officer?  What if he had a conversation with that neighbor in his elevator?  Or what if he made a

friend at his anger management classes and they had a conversation on their way home?  Based

on the inclusion of the term "sexual or not," Rosenberger may have been referring to any

romantic relationship, but even that term has been found to be unconstitutionally vague in the

post-release supervision context.  *See Reeves*, 591 F.3d at 81.  In any event, at this stage, I find

Plaintiff has plausibly alleged that "people of common intelligence . . . would find it impossible

to agree on the proper application of a release condition triggered by entry into a ['relationship']." *Id.*

Further, Plaintiff has plausibly alleged that this restriction was not reasonably related to his past conduct. Regardless of what meaning one attributes to "relationship . . . sexual or not," it is unclear how that relates to Plaintiff's criminal act involving his six-year-old cousin. There is nothing in the Complaint to suggest that Plaintiff ever engaged in any criminal act with a romantic partner or anyone else with whom he was in a relationship. (While the term "relationship" is undefined, the Court doubts Rosenberger was referring to the relationship Plaintiff had with his six-year-old cousin.) And the prohibition was not limited to relationships with children or with people who have children. A condition this broad and restrictive, without any relation to Plaintiff's underlying offense, is plausibly arbitrary and capricious. Accordingly, Plaintiff may proceed on his claim regarding this special condition.

### E.    Qualified Immunity

Defendants argue that even if Plaintiff plausibly alleged that the special conditions of his parole were unconstitutional, Defendants are entitled to dismissal on qualified immunity grounds. (Ds' Mem. at 19-25.)

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (internal quotation marks omitted), or insofar as it was objectively reasonable for the official to believe that his or her conduct did not violate such rights, *see Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). A governmental official sued in his individual capacity is entitled to qualified immunity

> (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3)

24

> if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.

*Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002) (internal quotation marks, citations, and alterations omitted); *see Creighton,* 483 U.S. at 639 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken.") (internal quotation marks and citation omitted).  Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

As the Second Circuit recently explained:

> To be sure, qualified immunity should be resolved at the earliest possible stage in litigation.  But there is an obvious, if rarely expressed, corollary to that principle:  The immunity question cannot be resolved before the earliest possible stage, *i.e.*, prior to ascertainment of the truth of the plausible factual allegations on which a finding of qualified immunity is premised.  And since qualified immunity is an affirmative defense that is typically asserted in an answer, as a general rule, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion.

*Chamberlain ex rel. Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (internal quotation marks, citations, emphasis, and alteration omitted).  In other words, the Second Circuit has cautioned district courts against granting motions to dismiss on qualified immunity grounds.  *See id.*; *see also Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order) ("[A] defendant asserting a qualified immunity defense on a motion to dismiss faces a formidable hurdle and is usually not successful.") (internal quotation marks and alteration omitted).

Here, Plaintiff has plausibly alleged that eight of the special conditions of his parole were not reasonably related to his past conduct, and thus those conditions violated his due process

rights (as well as his First Amendment rights in some cases).  As discussed at length in this opinion, it is well settled that conditions of release must be reasonably related to the parolee's underlying offense, and all parole officers should be aware of this fundamental legal principle setting the parameters of the conditions they may or may not impose.  On one hand, once the facts are developed in discovery, it may come to light that Plaintiff's right to be free from all or some of his special conditions, given the facts and circumstances of his case, was not clearly established.  On the other hand, it may become clear that no reasonable parole officer in the position of Defendants could have thought the restrictions to be constitutional.  At this early stage, I cannot make that determination.  For that reason, Defendants' motion to dismiss on qualified immunity grounds is rejected.

IV.   **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.  Plaintiff's Complaint is dismissed to the extent it seeks declaratory relief and brings claims against Defendants in their official capacities.  Plaintiff's first claim – alleging procedural and substantive due process violations due to Defendants designating him as a discretionary sex offender – is also dismissed.  Plaintiff's second claim is dismissed to the extent it is premised on the special condition that he was prohibited from having contact with minors without permission.  Defendants' motion is denied in all other respects, and Plaintiff may proceed on claims regarding the following conditions:  camera restrictions, vehicle restrictions, computer and internet restrictions, prohibition of obtaining his EMT certification, required disclosure of youthful offender status to colleges, and required notice to Rosenberger of any relationships.  The Clerk of Court is respectfully directed to terminate the pending motion.  (Doc. 23.)

The parties shall attend a scheduling conference by telephone on August 6, 2020, at 4:15 p.m.  Because Plaintiff did not amend his Complaint or oppose Defendants' motion, he may no

longer intend to pursue this case.  He is advised that if he fails to attend the conference as directed, this case may be dismissed under Federal Rule of Civil Procedure 41 for failure to prosecute, without further order.  The Clerk of Court shall send Plaintiff a copy of this Opinion and Order.

**SO ORDERED.**

Dated: July 24, 2020
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.